Filed 1/11/23  Barbaccia v. GBR Magic Sands MHP CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| LOUIS P. BARBACCIA, SR., as Trustee, etc. et al.,<br><br>    Plaintiffs and Respondents<br><br>    v.<br><br>GBR MAGIC SANDS MHP, LLC,<br><br>    Defendant and Appellant. | B322596<br><br>(Santa Clara County Super. Ct. No. 17CV313947)<br><br>**ORDER MODIFYING OPINION AND DENYING PETITIONS FOR REHEARING [NO CHANGE IN JUDGMENT]** |

THE COURT:

The opinion filed December 16, 2022, and not certified for publication, is modified as follows:

1.  On page 46, second paragraph, line 1, the word "has" is changed to "may have," and on line 2, the word "uncontradicted" is deleted, so that the sentences read:

GBR may have a point, but not one that warrants reversal. GBR presented evidence the 2007 lease agreements and related documents describe the property encumbered by the leases as including Parcel Eight.

2.  On page 46, lines 10-11, delete the sentence:

    Therefore, "all of" lot 26, as described in the leases, includes Parcel Eight.

3.  On pages 46-47, footnotes 21 and 22 are deleted.

    The petitions for rehearing are denied.

    This order does not change the appellate judgment.

_____

  PERLUSS, P. J.                SEGAL, J.
FEUER, J.

Filed 12/16/22  Barbaccia v. GBR Magic Sands MHP CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| LOUIS P. BARBACCIA, SR., as Trustee, etc. et al., <br><br> Plaintiffs and Respondents <br><br> v. <br><br> GBR MAGIC SANDS MHP, LLC, <br><br> Defendant and Appellant. | B322596 <br><br> (Santa Clara County Super. Ct. No. 17CV313947) |

APPEAL from a judgment of the Superior Court of Santa Clara County, Thang N. Barrett, Judge.  Reversed with directions.

Morgan Franich Fredkin Siamas & Kays, William Siamas, David A. Kays and Mark B. Fredkin for Defendant and Appellant.

Hopkins & Carley, David W. Lively, Allonn E. Levy and Ryan Cunningham; Gates Eisenhart Dawson, Marc A. Eisenhart and James L. Dawson for Plaintiffs and Respondents.

# INTRODUCTION

Since 2007 brothers Louis P. Barbaccia, Sr. (Lou) and Cyril Barbaccia (Cy) (now deceased), their two sisters, and their respective successors, have been litigating in Santa Clara County Superior Court over the rights to a 20-acre property in San Jose. Lou, Cy, and their parents originally obtained the property in the 1960s, with Lou and Cy collectively holding an undivided one-half interest in the property and the parents holding the other undivided one-half interest. In 1963 the parents agreed to lease their interest to Lou and Cy under a 98-year lease. The brothers subsequently built a mobilehome park on the property.

By 2010, after a series of transactions and lawsuits, Josephine Pecoraro (Cy and Lou's sister), Catherine Pecoraro (Cy and Lou's niece; the daughter of their deceased sister, Rita), Lou, and Loubar LLC—an entity created by Lou—collectively held, in various shares, the one-half interest originally owned by Cy and Lou's parents. GBR Magic Sands MHP, LLC—an entity created by Cy to operate the mobilehome park—held the right to lease that one-half interest under the 1963 lease. Loubar separately owned the collective one-half interest originally owned by the brothers, which GBR also held the right to lease under two separate agreements.

In 2010 Josephine and Catherine (backed by Lou) filed an action in Santa Clara County Superior Court to cancel the 1963 lease and to quiet title to the one-half undivided interest originally owned by Cy and Lou's parents. (*Pecoraro v. GBR Magic Sands MHP, LLC* (Super. Ct. Santa Clara County, 2013, No. 1-10-CV-186621) (the *Pecoraro* action).) Josephine and Catherine prevailed. The trial court in that action ruled Cy

2

obtained the 1963 lease from his parents by "undue influence," and in 2013 the court entered a judgment canceling the lease, quieting title in favor of Josephine, Catherine, and Lou, and ordering GBR to relinquish possession of the one-half interest in the property originally owned by Cy and Lou's parents and previously encumbered by the 1963 lease. In October 2016 the Sixth District Court of Appeal affirmed that judgment. (See *Pecoraro v. Barbaccia* (Oct. 18, 2016, H040008, H040222) [nonpub. opn.].)

GBR, however, did not relinquish possession of the property. It continued to operate the mobilehome park and lease mobilehome lots on the property to tenants. In 2018 Loubar, Lou, Catherine, and Vivian Martorana (the Loubar plaintiffs)[1] filed this action against GBR seeking mesne profits from GBR's continued possession of the Loubar plaintiffs' undivided one-half interest in the property.[2] GBR, in turn, filed a cross-complaint

---

[1] Josephine died in 2016, and Martorana sued as trustee of the Josephine Pecoraro Trust. Lou similarly sued as trustee of the Louis P. Barbaccia Sr. Inter Vivos Trust.

[2] Mesne profits are recoverable from a trespasser or other wrongful possessor of land and include the "value of the rents, issues and profits of the land during a certain period." (*Haggin v. Clark* (1875) 51 Cal. 112, 115; see *Pocono Realty Co. v. Lamar Advertising Co.* (3d Cir. 2010) 395 Fed.Appx. 903, 904 [mesne profits are "[t]he profits of an estate received by a tenant in wrongful possession between two dates"].) "Mesne," pronounced "mean," is a medieval French legal term meaning "intermediate." (*Davis v. L.N. Dantzler Lumber Co.* (1923) 261 U.S. 280, 283; *Larsson v. Grabach* (2004) 121 Cal.App.4th 1147, 1151; *ODonnell v. Harris County, Texas* (S.D.Tex. 2017) 251 F.Supp.3d 1052, 1070, fn. 6.)

3

seeking declaratory relief to allow it to occupy the entire property and continue operating the park. Following a nonjury trial, the trial court ruled in favor of the Loubar plaintiffs and awarded them over $5 million in damages.

GBR makes several arguments on appeal, which generally involve some version of the argument that the judgment in the *Pecoraro* action quieting title to the Loubar plaintiffs' one-half interest had no practical effect on GBR's right to possess the property. As we explain, those arguments lack merit, and GBR is liable for damages caused by continuing to possess or occupy the property to the exclusion of the Loubar plaintiffs after the date the *Pecoraro* judgment became enforceable. GBR may not relitigate whether it has any rights in the Loubar plaintiffs' one-half interest.

GBR, however, is partially correct on one of its arguments: Claim preclusion bars the Loubar plaintiffs from recovering damages from GBR's possession of the property before the judgment in the *Pecoraro* action became enforceable, which as we explain was not until the Sixth District Court of Appeal issued its remittitur on January 12, 2017. If the Loubar plaintiffs wanted to seek damages for GBR's possession of the property before that date, they had to seek those damages in the *Pecoraro* action. Thus, by awarding the Loubar plaintiffs damages for GBR's possession of the property as far back as August 2012, the trial court erred.

GBR is also correct on an argument that affects part of the property at issue in this appeal: Substantial evidence did not support the trial court's ruling in favor of the Loubar plaintiffs on their third cause of action, in which the Loubar plaintiffs sought damages for GBR's alleged possession of a vacant lot on land the

4

parties refer to as Parcel Eight. The Loubar plaintiffs did not prove GBR occupied or excluded the Loubar plaintiffs from Parcel Eight during the relevant time period.

Therefore, we reverse the judgment and direct the trial court to conduct a new trial on damages, limited to damages incurred after January 12, 2017. After the new trial, the court is directed to enter a new judgment that, among other things, finds in favor of GBR on the Loubar plaintiffs' third cause of action and in favor of the Loubar plaintiffs on GBR's cross-complaint.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Property*

Philip and Josephine Greco Barbaccia had four children: Cy, Lou, Josephine, and Rita. In December 1960 the parents purchased a 20-acre orchard in San Jose (the Property) and transferred an undivided one-fourth interest in the Property to each of Cy and Lou. Cy and Lou formed a business partnership, which held their collective one-half interest (the partnership's one-half interest). The parents kept the remaining one-half interest. Over the next few years, Cy and Lou bought 36 additional acres adjacent to the Property. In 1963 the parents leased their one-half interest in the Property to the brothers for 98 years.

The Property contains three parcels: Parcel One, Parcel Three,[3] and Parcel Eight. Cy and Lou developed the Magic Sands

---

[3]    It appears Parcel Three was not part of the original 20 acres the parents purchased. At some point the City of San Jose initiated a condemnation proceeding and obtained a portion of

Mobile Home Park on Parcel One, Parcel Three, and the adjacent 36 acres. For many years they leased Parcel Eight to Standard Oil Company, and then to Standard Oil's successor, Chevron USA, for a gas station.

After both parents died, Cy, Lou, Josephine, and Rita's two children, Anthony and Catherine Pecoraro, inherited the parents' interest in the Property: Cy, Lou, and Josephine each inherited an undivided one-eighth interest in the Property (one-fourth of the parents' one-half interest), and Catherine and Anthony each inherited an undivided one-sixteenth interest in the Property (one-eighth of the parents' one-half interest.)[4] Anthony sold his interest to Cy, giving Cy an undivided three-sixteenth interest. The collective one-half interest in the Property that Cy, Lou, Josephine, and Catherine obtained from the parents remained encumbered by the 1963 lease. Cy and Lou's company, Barbaccia Properties L.P., held the partnership's one-half interest, which was not encumbered by the 1963 lease.

---

the original 20 acres, but added adjacent land to the property the County of Santa Clara's records and parties refer to as Parcel Three.

[4] Catherine and Anthony inherited their interests through their mother, Rita, who predeceased her mother, Josephine Greco Barbaccia. Anthony and Catherine have the same last name as their aunt, Josephine Pecoraro, because both Josephine and Rita married men with the last name Pecoraro.

6

B.    *Loubar Obtains Cy's Interest in the Property, Plus the Partnership's One-half Interest, Pursuant to a Partition*

Cy and Lou's partnership came to an end.  In 2006 Cy and new business partners purchased the partnership's one-half interest from Barbaccia Properties.  Cy then orchestrated a series of transfers and leases between various entities with which he was affiliated.  An entity called MHP Roll-Up ultimately obtained the partnership's one-half interest, and in 2007 GBR obtained the right to lease the partnership's one-half interest under two lease agreements.  These 2007 leases, which were essentially between entities affiliated with Cy and gave GBR the right to lease a one-half interest in the Property, figure significantly in the subsequent litigation among the family members.  The 2007 leases, combined with GBR's right to lease the other one-half interest in the Property under the 1963 lease, gave GBR the right to operate the mobilehome park on the entire property.

But that would change, in two steps.

Step one:  Lou, Josephine, and Catherine filed an action to partition the Property, and the parties stipulated to a procedure to sell the Property.  Lou, Josephine, and Catherine, collectively, submitted a successful bid, and in November 2010 the court entered an order confirming the sale.  After the sale the interests of Lou, Josephine, and Catherine remained unchanged, while Loubar obtained all of Cy's interest in the Property, plus the partnership's one-half interest.  At that point, the ownership interests in the Property were as follows:  Loubar owned the partnership's undivided one-half interest and Loubar, Lou, Josephine, and Catherine owned the remaining undivided three-

sixteenth, one-eighth, one-eighth, and one-sixteenth interests, respectively. GBR continued to have the right to operate the park under the three leases: the two 2007 leases, which granted GBR the right to lease the partnership's one-half interest (now owned by Loubar), and the 1963 lease, which granted GBR the right to lease the one-half interest originally owned by Cy and Lou's parents (and now owned by the Loubar plaintiffs).

> C. *Catherine and Josephine Successfully Sue To Cancel the 1963 Lease and Quiet Title to the Loubar Plaintiffs' Collective One-half Interest*

Step two: In 2010 Josephine and Catherine, with Lou's support and funding, filed the *Pecoraro* action against GBR and Cy asserting, among other things, a cause of action seeking to cancel the 1963 lease and a cause of action to quiet title to the Loubar plaintiffs' interests in the Property free and clear of any adverse claims.[5] Josephine and Catherine alleged that, when Cy, Lou, and their parents (i.e., Philip and Josephine Greco Barbaccia) entered into the lease almost 50 years ago, Cy "occupied an intimate and confidential relationship with his parents," "exert[ed] undue influence" on them, and "fraudulently obtain[ed]" the lease, the terms of which "were unfair" and "substantially below market value . . . ." Initially, Josephine and Catherine also sought damages for Cy and GBR's operation of the mobilehome park on the Property pursuant to the 1963 lease, but during the litigation they abandoned those damages claims.

In May 2013, following a nonjury trial, the trial court in the *Pecoraro* action entered judgment in favor of Josephine and

---

[5] Josephine and Catherine named Lou as a nominal defendant, but Lou did not oppose their claims.

8

Catherine.  The court ruled that Cy had a confidential and fiduciary relationship with his parents when he, Lou, and their parents executed the 1963 lease and that Cy gained an unfair advantage because the lease terms were below fair market value.  The court ruled that "the fee title holders to the Property"—Loubar, Lou, Catherine, and Josephine—were "entitled to cancellation of the 1963 lease" and "possession of" the collective one-half "interest in the Property previously subject to the 1963 lease."[6]  The court also ruled GBR and Cy had "no right, title or interest" in the Loubar plaintiffs' one-half interest and enjoined them "from making any further adverse claims to said interest in the Property . . . ."  Finally, the court ordered GBR to "forthwith relinquish possession of" the Loubar plaintiffs' "undivided fifty percent leasehold interest in the Property . . . ."

GBR and Cy filed a notice of appeal and sought to stay enforcement of the judgment pending appeal.  The trial court set the bond at $544,000, which the court found represented Josephine and Catherine's estimated lost income from the Property between May 2013 and June 2015.  GBR posted the bond, and the trial court in the *Pecoraro* action stayed enforcement of the judgment pending appeal.  In October 2016 the Sixth District Court of Appeal affirmed the *Pecoraro*

---

[6]     As we will explain, the court referred to the undivided one-half interest originally owned by Cy and Lou's parents (i.e., the Loubar plaintiffs' one-half interest) as the interest "previously subject to the 1963 lease" to distinguish it from the remaining undivided one-half interest (i.e., the partnership's one-half interest), which GBR separately held the right to lease, but which the 1963 lease did not encumber.  The court in the *Pecoraro* action did not adjudicate any leasehold or ownership rights in the partnership's one-half interest.

9

judgment, and on January 12, 2017 (a key date in this appeal) issued its remittitur.

> D. *The Loubar Plaintiffs File This Action To Recover Damages After GBR Continues To Possess the Property*

The Loubar plaintiffs filed this action in Santa Clara County Superior Court after the Sixth District Court of Appeal issued its remittitur in the *Pecoraro* action. The Loubar plaintiffs alleged that, "as a consequence of the [j]udgment" in the *Pecoraro* action, GBR "no longer enjoyed any rights or benefits under the 1963 Lease," including the right to possess their undivided one-half interest. The Loubar plaintiffs alleged that, despite the *Pecoraro* judgment, GBR had "entirely maintained control and possession" of their one-half interest by continuing to control the management and operation of the mobilehome park and by continuing to "collect and keep for itself 100% of the gross rents" and income derived from the park. The Loubar plaintiffs asserted three causes of action against GBR—one for each of Parcels One, Three, and Eight—seeking mesne profits as damages. The Loubar plaintiffs filed similar causes of action for declaratory relief, seeking an order that they were entitled to a proportional share of GBR's net operating income from the mobilehome park.

GBR filed a cross-complaint, asserting various causes of action for declaratory relief. Among other things, GBR sought a declaration that it was "entitled to occupy and use the entire 20 Acres" of the Property "and not merely some portion thereof" and that its "occupation of the Property and operation of Magic

10

Sands does not violate or infringe on any right" of the Loubar plaintiffs.

At trial the Loubar plaintiffs presented evidence that after the judgment in the *Pecoraro* action GBR continued to operate the mobilehome park. John Guerra, Jr., GBR's chief executive officer and manager, admitted that after January 2017 GBR continued to lease lots in the park. He also admitted GBR raised the rent on all existing leases and entered into multiple new leases without obtaining the Loubar plaintiffs' consent. The leases granted tenants the exclusive right to occupy the mobile home lots. Guerra also testified that the Loubar plaintiffs asked GBR to allow them to use some unoccupied offices in a clubhouse located in the park, but that he denied the request.

Cindy Gurtowski, the successor trustee of the Josephine Pecoraro Family Trust,[7] testified someone put up an "ugly cyclone fence" around Parcel Eight without her permission.[8] Guerra testified the purpose of the fence, which is adjacent to a street and sidewalk, was to keep people who were homeless off the property.

GBR raised several related defenses to the Loubar plaintiffs' complaint. First, GBR argued the judgment in the *Pecoraro* action barred the Loubar plaintiffs from seeking damages for GBR's occupation of the Property (even though the *Pecoraro* judgment quieted title in favor of the Loubar plaintiffs

---

[7] Martorana died in 2018. Gurtowski substituted into the action as the successor trustee of Josephine's trust.

[8] A cyclone fence is a steel wire mesh or chain link fence. (See *Carlstrom v. Lyon Van & Storage Co.* (1957) 152 Cal.App.2d 625, 628.)

11

and ordered GBR to relinquish possession of the Loubar plaintiffs' one-half interest) because the Loubar plaintiffs could have sought damages in that action. Second, GBR argued the 2010 partition order established that the 2007 leases granted GBR the right to occupy the entire Property—not just the partnership's one-half interest—and therefore precluded the Loubar plaintiffs from contesting GBR's right to occupy the Property. Third, GBR argued that (regardless of whether the partition order had any preclusive effect) the Loubar plaintiffs "consented" to having GBR occupy the entire Property under the 2007 leases.

### E. *The Trial Court Rules for the Loubar Plaintiffs*

The trial court found in favor of the Loubar plaintiffs on each of their causes of action. In its statement of decision the court found that after the judgment in the *Pecoraro* action GBR "occupied the Property to the exclusion of Plaintiffs" by "renewing mobile home tenant leases without notice to Plaintiffs, without listing Plaintiffs as co-landlords, without Plaintiffs' consent, and without mentioning Plaintiffs' possessory interest in the Property." The court ruled that, by doing so, GBR failed to comply with the portion of the judgment directing it to relinquish possession of the Loubar plaintiffs' one-half interest in the Property and enjoining GBR from making further adverse claims to the Property.

The trial court rejected GBR's defenses. In particular, the court ruled the *Pecoraro* judgment barred GBR from contending it had the right to possess the Loubar plaintiffs' one-half interest under the 2007 leases or as a result of the 2010 partition order. The court further ruled the doctrine of claim preclusion did not

12

bar the Loubar plaintiffs from seeking damages for GBR's possession of the Property after the *Pecoraro* judgment "because the complained[-]about conduct of GBR as well as the damages sought arose after the effective date" of the judgment. The court reasoned that, under GBR's theory, the judgment canceling the lease and quieting title in favor of the Loubar plaintiffs would have "no effect or consequences for the parties" and would actually leave GBR in a better position because "its exclusive use of the property [would] remain[ ] undisturbed, but without the burdens of being a lessee"—and therefore paying rent—"under the 1963 Lease."

The trial court entered judgment in favor of the Loubar plaintiffs and against GBR on each of the causes of action in the Loubar plaintiffs' complaint and on each of the causes of action in GBR's cross-complaint. Relying on the testimony of a certified general appraiser who analyzed Magic Sands' operating income, the court awarded the Loubar plaintiffs $5,548,876 in damages "for the period from August 3, 2012 through June 20, 2019," consisting of $5,047,451 for the Loubar plaintiffs' proportionate share of the income generated by Magic Sands and $501,425 for the reasonable rental value of Parcel Eight. The court also awarded the Loubar plaintiffs $2,147 as daily damages until the entry of judgment. GBR timely appealed. In August 2022 the appeal was transferred to this district.

## DISCUSSION

### A. *Standard of Review*

On appeal from a judgment based on a statement of decision following a court trial, we "review questions of law de novo and we review the trial court's findings of fact under the

13

substantial evidence standard." (*Gajanan Inc. v. City and County of San Francisco* (2022) 77 Cal.App.5th 780, 791-792; see *Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981.) "We construe findings of fact liberally to support the judgment; consider the evidence in the light most favorable to the judgment; draw all reasonable inferences in support of the findings; and infer that the trial court "'impliedly made every factual finding necessary to support its decision.""" (*Gajanan*, at pp. 791-792; see *Thompson*, at p. 981; *Barickman v. Mercury Casualty Co.* (2016) 2 Cal.App.5th 508, 516.)

B. *The Trial Court's Ruling That GBR Violated the* Pecoraro *Judgment Was Partially Correct*

As discussed, the *Pecoraro* judgment stated the Loubar plaintiffs were "entitled to . . . possession" of their undivided one-half interest and ordered GBR to "relinquish possession of," and make no further claims adverse to, that interest. The trial court in this action ruled GBR did not relinquish possession of the Loubar plaintiffs' one-half interest in Parcels One and Three—the parcels on which the mobilehome park sits—or the Loubar plaintiffs' one-half interest in Parcel Eight. The former ruling was correct; the latter was not.

1. *GBR Failed To Relinquish Possession of Parcels One and Three*

The trial court ruled GBR failed to relinquish possession of the Loubar plaintiffs' one-half interest in Parcels One and Three because GBR continued to lease mobilehome lots to tenants, granted tenants exclusive possession of the lots, and refused to allow the Loubar plaintiffs to use offices in the clubhouse. The

14

parties do not dispute GBR has the right to lease the partnership's undivided one-half interest under the 2007 leases. GBR appears to contend that, because it has the right to lease an undivided one-half interest (the partnership's interest) in the parcels under the 2007 leases, its conduct did not violate the judgment. GBR is incorrect.

In general, a tenant "equally is entitled to share in the possession of the entire property" with a cotenant.[9] (*Zaslow v. Kroenert* (1946) 29 Cal.2d 541, 548.) But "neither may exclude the other from any part of it." (*Id.* at p. 548; see *Tom v. City & County of San Francisco* (2004) 120 Cal.App.4th 674, 676; *Munkdale v. Giannini* (1995) 35 Cal.App.4th 1104, 1114.) "An ouster . . . is the wrongful dispossession or exclusion by one tenant of his cotenant or cotenants from the common property of which they are entitled to possession," such as by "claiming the whole for himself, denying the title of his companion, or refusing to permit him to enter." (*Zaslow*, at p. 548; see *Hacienda Ranch Homes, Inc. v. Superior Court* (2011) 198 Cal.App.4th 1122, 1128.)

Substantial evidence supported the trial court's finding GBR dispossessed the Loubar plaintiffs from their undivided one-half interest in Parcels One and Three (i.e., refused to relinquish possession). GBR's chief executive officer, Guerra, admitted that the Loubar plaintiffs asked if they could use some

---

[9] The trial court ruled that, because GBR held the right to lease the partnership's undivided one-half interest and the Loubar plaintiffs owned the other undivided one-half interest previously owned by Cy and Lou's parents, GBR and Loubar were "similarly situated" to cotenants—a proposition neither party disputes.

15

of the offices in the mobilehome park and that he did not allow them to. That testimony, without more, was substantial evidence to support the court's finding. (See *Greer v. Tripp* (1880) 56 Cal. 209, 212 ["a refusal, after a proper demand by a tenant in common in possession to admit his co-tenant into the possession, is itself an ouster, and dispenses with the necessity of further proof on that point"]; *Wood v. Henley* (1928) 88 Cal.App. 441, 454 [ouster includes the "refusal of a tenant in possession on a proper demand, to let his cotenant into possession"].)[10]

But there was more: GBR continued to lease lots in the mobilehome park. A cotenant may not enter into a lease that purports to grant the lessee exclusive possession of property without obtaining the consent of the other cotenants. (See *King v. Oakmore Homes Assn.* (1987) 195 Cal.App.3d 779, 783 [because "'[o]ne cotenant cannot, without special authority from the other cotenants, encumber the entire estate' . . . absent the cotenant's consent, a tenant may not . . . contract with third persons concerning the common property"]; *Kraemer v. Kraemer* (1959) 167 Cal.App.2d 291, 307 ["[a]n entry by a grantee under a deed from a cotenant in exclusive possession, which purports to convey the whole of the property, without notice of the cotenancy, is presumed to be the assertion of an exclusive right in severalty" and "constitutes an ouster of the cotenants out of possession"].) It was undisputed that, after the Court of Appeal in the *Pecoraro*

_____

[10] GBR asserts the request was a "ruse" manufactured by the attorneys for the Loubar plaintiffs. If it was a ruse, it was a good one. Regardless of who came up with the idea to ask about using the offices, GBR's response demonstrated it was "claiming the whole" of Parcels One and Three and "refusing to permit" the Loubar plaintiffs to enter the property. (*Zaslow v. Kroenert*, *supra*, 20 Cal.2d at p. 548.)

16

action issued its remittitur affirming the judgment, GBR continued to lease mobilehome lots to tenants and granted them exclusive possession of the lots. GBR concedes it refused to relinquish possession, asserting it was "<u>impossible</u> for GBR to operate Magic Sands and simultaneously 'relinquish' or 'get off of' Plaintiffs' undivided interest." That is, essentially, the Loubar plaintiffs' point.

And still more: It was undisputed GBR did not share with the Loubar plaintiffs any of the rental income GBR received from the leases. That too supported the trial court's finding GBR excluded the Loubar plaintiffs from Parcels One and Three. (See *Dabney-Johnston Oil Corp. v. Walden* (1935) 4 Cal.2d 637, 656 ["where one of several cotenants . . . receives rents from third persons for the use of the land, he must account to his cotenants for their share"]; *Edwards v. Edwards* (1949) 90 Cal.App.2d 33, 43 [where cotenants could not share physical possession of property, a cotenant would "have to account to [the other cotenant] for [his] share of the rentals received"]; see also *Boccanfuso v. Green* (Conn.App. 2005) 880 A.2d 889, 313-314 ["By ouster is not meant a physical eviction, but a possession attended with such circumstances as to evince a claim of exclusive right and title, and a denial of the right of the other tenants to participate in the profits."]; cf. *Graybiel v. Burke* (1954) 124 Cal.App.2d 255, 265 [cotenant's "acts in contracting to sell *all* of the merchantable timber" on property, "and in engaging [a third party] to conduct the logging operations, manifested an intention on his . . . part to hold exclusively for himself and amounted to an ouster of the other cotenants"].)

## 2. *GBR Did Not Fail To Relinquish Possession of Parcel Eight*

The trial court also ruled GBR violated the *Pecoraro* judgment because GBR "excluded [the Loubar] Plaintiffs from Parcel Eight." Substantial evidence did not support that finding.

The only evidence the Loubar plaintiffs submitted at trial that GBR excluded them from Parcel Eight was testimony (and a picture showing) GBR erected an "ugly" cyclone fence around the parcel. That was not enough. Because, as a tenant under the 2007 leases, GBR held the right to possess an undivided one-half interest in the parcel, it had the right to use the entire property— including keeping other people off the property—so long as GBR did not also exclude the Loubar plaintiffs. (See *Morin v. City Council of City of San Jose* (1952) 109 Cal.App.2d 268, 271 ["[o]ne cotenant can at any time protect the entire estate from injury or loss without calling to his aid the assistance of the other cotenants," including "resist[ing] an intruder, or evict[ing] a trespasser"].) Had the Loubar plaintiffs submitted evidence GBR erected the fence to keep them off the property, such evidence may have been sufficient to show GBR refused to relinquish possession. But they did not. There was no evidence that the Loubar plaintiffs could not access Parcel Eight, that GBR denied a request by the Loubar plaintiffs to access the parcel, or that GBR erected the fence for any reason other than to exclude trespassers. (See *Estate of Hughes* (1992) 5 Cal.App.4th 1607, 1613 [where cotenant "manifest[ed] neither an intent to share possession nor to deprive other cotenants from sharing possession," the trial court "properly decided that absent any evidence [cotenant] actually excluded [other cotenants], it could not find an ouster"]; see also *Askley v. Bassett* (1922) 189 Cal.

18

625, 642 [ouster requires "acts of the most open and notorious character, clearly giving notice . . . to all having occasion to observe the condition and occupancy of the property, that the intention is to exclude, and does exclude the cotenant"].)[11]

Moreover, Lou admitted during trial that he placed a sign on Parcel Eight advertising the property for rent, that he in fact leased at least a portion of Parcel Eight, and that he did not share the rental income with GBR. Thus, the Loubar plaintiffs were not excluded from Parcel Eight; they were actually using it (or at least Lou was and the other Loubar plaintiffs could have). Substantial evidence did not support the court's finding GBR failed to relinquish possession of Parcel Eight, and the trial court erred in awarding the Loubar plaintiffs damages for their alleged lost use of that property.

---

[11] As we will discuss in more detail, the trial court, in denying GBR's requests for declaratory relief, appeared to rule GBR did not have any rights to Parcel Eight, which would include the right to lease even the partnership's undivided one-half interest in the parcel. The Loubar plaintiffs, however, sought relief (and the trial court awarded damages) only on the ground that they owned the one-half interest in Parcel Eight in which the court quieted title in the *Pecoraro* action and that GBR violated the *Pecoraro* judgment by failing to relinquish possession. The Loubar plaintiffs did not allege or argue GBR's decision to erect the fence constituted, for example, an independent tort entitling them to relief.

19

C.   *Claim Preclusion Bars Part of the Loubar Plaintiffs'*
     *Claims*

1.   *Applicable Law and Standard of Review*

Claim preclusion, "formerly called res judicata, 'prohibits a second suit between the same parties on the same cause of action.' [Citation.] 'Claim preclusion arises if a second suit involves (1) the same cause of action (2) between the same parties [or their privies] (3) after a final judgment on the merits in the first suit.'" (*Kim v. Reins Intern. California, Inc.* (2020) 9 Cal.5th 73, 91; see *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824.) Whether claim preclusion applies is a question of law we review de novo. (*In re Marriage of Brubaker & Strum* (2021) 73 Cal.App.5th 525, 538; *Johnson v. GlaxoSmithKline, Inc.* (2008) 166 Cal.App.4th 1497, 1507.)

The parties do not dispute GBR satisfied the last two elements of claim preclusion: The *Pecoraro* action involved the same parties (or their privies) as those in this action and resulted in a final judgment on the merits.[12] The parties only dispute whether this action and the *Pecoraro* action involve the same cause of action.

For purposes of claim preclusion, "California law identifies a single cause of action as 'the violation of a single primary right.'" (*Boyd v. Freeman* (2017) 18 Cal.App.5th 847, 854; see *Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 813.)

---

[12]   GBR, Lou, and Catherine were parties to the *Pecoraro* action. Gurtowski, as successor trustee of Josephine's trust, is the successor to Josephine, who was a party to the action. And the Loubar plaintiffs do not dispute Loubar was in privity with Lou for purposes of claim preclusion.

20

Under the primary right theory, the "cause of action is the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced." (*Boeken*, at p. 798; see *Boyd,* at p. 855.) The "determinative factor is the harm suffered. When two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right." (*Boeken*, at p. 798; see *Hi-Desert Medical Center v. Douglas* (2015) 239 Cal.App.4th 717, 733; *Federal Home Loan Bank of San Francisco v. Countrywide Financial Corp.* (2013) 214 Cal.App.4th 1520, 1531.)

GBR argues the same primary right at issue in the *Pecoraro* action is at issue in this action; namely, the Loubar plaintiffs' right to possess their undivided one-half interest free from the burden of the 1963 lease. GBR contends, therefore, the Loubar plaintiffs had to seek all relief, including damages for GBR's continued possession of the Property, in the *Pecoraro* action. In contrast, the Loubar plaintiffs argue the *Pecoraro* action and this action involve different primary rights because the two actions seek relief for different harms: in the *Pecoraro* action, for harm caused by Cy's procurement of the 1963 lease from his parents by undue influence; in this action, for harm caused by GBR's refusal to relinquish possession of the Property as required by the *Pecoraro* judgment.

Each side is partially correct. Claim preclusion bars the Loubar plaintiffs from seeking damages for GBR's possession of the Property before the judgment in the *Pecoraro* action was enforceable. But claim preclusion does not bar the Loubar plaintiffs from seeking damages for GBR's possession of the Property after the *Pecoraro* judgment became enforceable. For

21

the latter time period, the Loubar plaintiffs can bring an independent action on the judgment, including an action for damages.

      2.      *The Loubar Plaintiffs' Claims for Damages Caused by GBR's Conduct After January 12, 2017 Are Not Barred*

An action to quiet title to, or obtain possession of, real property generally involves the same primary right as an action seeking damages from the person or entity wrongfully possessing the property. Therefore, a party may not seek to quiet title to, or obtain possession of, property in one action and seek damages caused by the defendant's possession of that property in a subsequent action. (See *McNulty v. Copp* (1954) 125 Cal.App.2d 697, 705 [action canceling a deed and quieting title to real property barred a subsequent action for damages caused by the wrongful possession of the property because "[t]he same wrongful act—the possession under a false claim of right—gave rise to both" actions]; *McCaffrey v. Wiley* (1951) 103 Cal.App.2d 621, 626 [action to eject a party from land barred a subsequent action to recover damages from the party previously withholding the land because the "question of damages for withholding the possession of land from another" and the "question as to the right of possession of the land . . . both rest upon the same invasion or violation of the same right"]; see also *Hatch v. Bank of America N. T. & S. A.* (1960) 182 Cal.App.2d 206, 208, 210 [action quieting title to a truck precluded a subsequent action for damages based on the defendant's use of the truck].)

An action to enforce a judgment, however, involves a different primary right from the right at issue in the underlying

22

action in which the court entered judgment.  When a court reduces a cause of action to judgment, the cause of action "'merges with the judgment and is thereby superseded'" (*Diamond Heights Village Assn., Inc. v. Financial Freedom Senior Funding Corp.* (2011) 196 Cal.App.4th 290, 301) or "extinguished" (*Tomaselli v. Transamerica Ins. Co.* (1994) 25 Cal.App.4th 1766, 1770).  (See *O'Neil v. General Security Corp.* (1992) 4 Cal.App.4th 587, 602; *Passanisi v. Merit-McBride Realtors, Inc.* (1987) 190 Cal.App.3d 1496, 1510.)  The prevailing party acquires new rights as a judgment creditor distinct from those for which it sought redress in the original action, including the right to enforce the judgment.  (See *Diamond Heights Village*, at p. 301 ["the judgment "' . . . creates a new debt or liability, distinct from the original claim or demand"'"]; *Tomaselli*, at p. 1770 ["upon entry of . . . judgment [the prevailing parties] . . . acquired such rights as are accorded a judgment creditor"]; Rest.2d Judgments, § 17, com. a [when a final judgment "is rendered in favor of the plaintiff, the claim is generally merged in the judgment . . . and the judgment with new rights of enforcement thereof is substituted for the claim"].)

Although the Enforcement of Judgment Law (Code Civ. Proc., §§ 680.010 et seq.)[13] establishes a comprehensive statutory scheme governing the enforcement of judgments, a judgment creditor may also bring an independent action on the judgment. (See *Thomas v. Thomas* (1939) 14 Cal.2d 355, 358 ["[t]he right to maintain an action on a domestic judgment has long been recognized in this state"]; *Barkley v. City of Blue Lake* (1996) 47 Cal.App.4th 309, 318 ["[a]n action on the judgment is an

---

[13]     Undesignated statutory references are to the Code of Civil Procedure.

23

alternative method of securing the judgment creditor's right to recover"]; see also § 683.050 [Enforcement of Judgment Law does not "[l]imit any right the judgment creditor may have to bring an action on a judgment"]; *Goldman v. Simpson* (2008) 160 Cal.App.4th 255, 262, fn. 3 ["[a]n action based on a judgment is an action based on contract"].) In particular, a party may bring an action on a judgment for damages where the other party fails to comply with a judgment directing it to surrender possession of real property. (See *Hidden v. Jordan* (1881) 57 Cal. 184, 186-187 [plaintiff could bring action seeking mesne profits where the defendant failed to comply with a judgment ordering the defendant to surrender to possession of the property]; see also *Colvig v. RKO General, Inc.* 232 Cal.App.2d 56, 74-75 (1965) [former employee could maintain an action for damages where the employer failed to comply with a judgment ordering employer to restore employee to his prior position].)

In addition, the doctrine of claim preclusion only "serves as a bar to all causes of action that were or could have been litigated in the first cause of action." (*McCready v. Whorf* (2015) 235 Cal.App.4th 478, 482; see *Allied Fire Protection v. Diede Construction, Inc.* (2005) 127 Cal.App.4th 150, 155.) Claim preclusion, however, "is not a bar to claims that arise after the initial complaint was filed." (*McCready*, at p. 482; see *Allied Fire Protection*, at p. 155.) An action to enforce a judgment not only involves a different primary right from the action establishing the judgment, such an action arises after the complaint in the prior action. As the court in *McCready* explained, because "an action to enforce a judgment . . . quite obviously" cannot be "litigated in the first action," claim preclusion does not bar a

24

subsequent action on the judgment. (*McCready*, at p. 483; see *ibid.* [judgment imposing a lien on the assets and profits of a business did not bar a subsequent action against the judgment debtor for money had and received based on conduct by the judgment debtor in avoiding the lien]; see also *Hoover v. Galbraith* (1972) 7 Cal.3d 519, 525 ["[a]n action on a judgment . . . may not be commenced until the judgment has become final"].)

The Supreme Court's decision in *Hidden v. Jordan, supra,* 57 Cal. 184—while not strictly a claim preclusion case—is instructive. In *Hidden* the plaintiff obtained a judgment ordering the defendant to execute a deed conveying real property to the plaintiff and then to "surrender[ ] and deliver[ ]" possession of the property. (*Id.* at p. 185.) Rather than comply, the defendant (like GBR) leased the property to third parties, who excluded the plaintiff from the property. The plaintiff subsequently sued the defendant for mesne profits "to recover the value of the use and occupation of the premises" while the defendant leased the property, and the trial court entered judgment in favor of the plaintiff. The Supreme Court affirmed, stating that the defendants, "instead of respecting" the judgment, "detained the possession from" the plaintiff and that, for "the damage they thus occasioned plaintiff, it is but just that they should respond, and we know of no rule of law that prevents their being made to do so." (*Id.* at pp. 186-187.)

The Loubar plaintiffs labeled each of their causes of action either as "for mesne profits" or for declaratory relief. The allegations make clear, however, the Loubar plaintiffs were bringing an action seeking damages because GBR failed to comply with the *Pecoraro* judgment. (See *Khodayari v.*

25

*Mashburn* (2011) 200 Cal.App.4th 1184, 1190 ["the nature of a cause of action does not depend on the label the plaintiff gives it or the relief the plaintiff seeks but on the primary right involved"].)  The Loubar plaintiffs alleged that the *Pecoraro* judgment "ordered that GBR 'shall forthwith relinquish possession'" of their one-half interest, but that GBR "maintained control and possession of the Current Undivided 50% including full control of the management and rental operations" of the mobilehome park, to the Loubar plaintiffs' "exclusion" and without their consent.

For at least the period after the Court of Appeal issued its remittitur in the *Pecoraro* action on January 12, 2017, the analysis is straightforward.  Once the Court of Appeal issued its remittitur, the *Pecoraro* judgment became final, the trial court's stay of the execution of the judgment was no longer in effect, and the Loubar plaintiffs could bring an independent action on the judgment to enforce their rights as judgment creditors.  (See *Hoover v. Galbraith*, *supra*, 7 Cal.3d at pp. 525-526 [for purposes of filing a judgment on an action, the "judgment has become final either upon expiration of the period within which an appeal may be taken, or, if an appeal is taken, upon the issuance of the remittitur when the judgment has been affirmed"]; *Archdale v. American Internat. Specialty Lines Ins. Co.* (2007) 154 Cal.App.4th 449, 479 ["An appeal is final on the date remittitur issues."]; *Cory v. Poway Unified School Dist.* (1983) 147 Cal.App.3d 1158, 1165 ["Where an appeal has been taken, a judgment is final upon the issuance of the

26

remittitur."].)[14]  Therefore, the Loubar plaintiffs' claims for damages caused by GBR's refusal to comply with the *Pecoraro* judgment after January 12, 2017 do not involve the same primary rights as those at issue in the *Pecoraro* action, and claim preclusion does not bar their claims for damages after that date.

> 3.  *The Loubar Plaintiffs' Claims for Damages Caused by GBR's Conduct Before January 12, 2017 Are Barred*

The trial court also awarded the Loubar plaintiffs damages for GBR's possession of the Property between August 3, 2012—the last day of the trial in the *Pecoraro* action—and January 12, 2017.  Whether the doctrine of claim preclusion bars the Loubar plaintiffs' claims for damages during this time period is not so straightforward.  But, in the end, claim preclusion applies here.

As discussed, a judgment in an action to quiet title to real property generally bars a subsequent action seeking damages for a person's wrongful possession of the property.  Here, the *Pecoraro* judgment stated the Loubar plaintiffs "were entitled to cancellation of the 1963 Lease as well as possession" of their one-half interest "effective as of August 3, 2012."  The trial court in the *Pecoraro* action, however, did not enter the judgment until May 2013.  Regardless of when the *Pecoraro* judgment stated the Loubar plaintiffs obtained the right to possess their undivided one-half interest in the Property, until May 2013 there was no judgment for GBR to comply with.  Thus, the Loubar plaintiffs

---

[14]  The parties appear to agree the stay ended when the Court of Appeal issued its remittitur.  (See *Granger v. Sheriff* (1903) 140 Cal. 190, 196 [stay of execution on appeal ends when the reviewing court loses jurisdiction].)

could not have brought an action on the judgment before May 2013.

Nor could the Loubar plaintiffs have brought an action for GBR's failure to comply with the judgment between May 2013 and January 2017. That is because the trial court stayed enforcement of the *Pecoraro* judgment under section 917.4 after GBR posted the undertaking set by the court. Because the court issued the stay, GBR did not have to comply with the *Pecoraro* judgment while the appeal was pending. (See *Petrolink v. Lantel Enterprises* (2022) 81 Cal.App.5th 156, 167 [appellant's "appeal and its posting of an undertaking [under section 917.4] . . . served to stay the amended judgment and render that judgment unenforceable until it became final"]; *id.* at p. 168 ["[b]ecause a trial court cannot enforce a judgment for specific performance that has been stayed pending appeal, that judgment cannot be considered to have fixed a date for performance until the stay has been lifted"]; *Hearn Pacific Corp. v. Second Generation Roofing, Inc.* (2016) 247 Cal.App.4th 117, 143, fn. 22 [judgment debtor "that appeals an adverse judgment rendered against *it,* and posts a bond to stay its execution, cannot be held liable in tort to the judgment creditor for refusing to pay the judgment"]; *Gray v. Bybee* (1943) 60 Cal.App.2d 564, 569 [stay of execution of a judgment has "the effect of a temporary injunction"].)

Indeed, the Loubar plaintiffs had a separate remedy to recover their loss of use of their one-half undivided interest while the *Pecoraro* appeal was pending: an action on the undertaking after the appeal. Section 917.4 provides that, when the trial court fixes the amount of an undertaking to stay enforcement of a judgment for "delivery of possession of real property," the order must require the appellant to "pay the damage suffered

28

by the . . . value of the use and occupancy of the property" if the judgment is affirmed.  (See *Royal Thrift & Loan Co. v. County Escrow, Inc.* (2004) 123 Cal.App.4th 24, 36 [undertakings under section 917.4 "cover the value of occupation and waste" during the appeal]; see also § 996.430, subd. (a) ["liability on a bond may be enforced by civil action"].)

The Loubar plaintiffs argue that, "where the challenged conduct post-dates the filing of the first action, [claim preclusion] cannot bar the subsequent action . . . ."  That is not an accurate statement of the law.  Claim preclusion bars a second action for violation of the same primary right involved in the first action, in light of the harm suffered.  Where a party suffers harm from a violation that begins before the party files a lawsuit and continues while the litigation is pending, there is only one primary right or cause of action for purposes of claim preclusion. (See *Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 906 [a decree for specific performance "bars a subsequent action for monetary relief based on the same breach of contract, even if this subsequent action seeks to recover for delay in performance occasioned by the litigation"]; *Van Horne v. Treadwell* (1913) 164 Cal. 620, 623 ["continued withholding of stocks or bonds after the bringing of action to enforce their delivery, pending the litigation and up to the time of the enforcement of the decree, is not a new wrong, redressible by a new action, but is simply a continuation of the original wrong, for which the only redress given by the law must be had in the original action"]; *Orloff v. Hollywood Turf Club* (1952) 110 Cal.App.2d 340, 345 [action for ejectment from a race track seeking injunctive relief barred a subsequent action seeking damages caused by the "continuing wrong" during the original action].)  Indeed, in *Hidden v. Jordan*,

*supra*, 57 Cal. 184 the Supreme Court held that, although the plaintiff could seek damages after the defendant violated the judgment, "[t]he mesne profits accruing to the plaintiff previous to the entry of the decree . . . could have been, and could *only* have been, allowed him in the [prior] action." (*Id.* at pp. 186-187.) Therefore, claim preclusion bars the Loubar plaintiffs' damages claims prior to January 12, 2017.[15]

> ### D. *Claim Preclusion Bars GBR from Asserting It Has the Right To Possess the Loubar Plaintiffs' One-half Interest in the Property*

GBR contends the trial court erred because it failed to rule in GBR's favor on two related defenses. First, GBR argues the 2010 partition order established that GBR had the right, under the 2007 leases, to operate the mobilehome park on the entire Property. Second, GBR argues the Loubar plaintiffs consented to GBR occupying the entire Property following the partition order. The Loubar plaintiffs contend claim preclusion bars these defenses. It does.

---

[15] Because the trial court awarded one amount of damages for GBR's possession of the Loubar plaintiffs' one-half interest in the Property between August 3, 2012 and June 20, 2019, the entire damages award must be reversed with directions for a new trial on those damages. For the same reason, because the court declared the Loubar plaintiffs were "entitled to recover" 50 percent of GBR's net operating income from August 3, 2012, the Loubar plaintiffs' causes of action for declaratory relief must be retried. We do not consider the parties' other arguments regarding whether the trial court erred in calculating the amount of damages.

30

As discussed, there is no dispute that the *Pecoraro* judgment was a final judgment on the merits or that GBR was a party in the *Pecoraro* action.  The only question is whether, in raising these two defenses, GBR is attempting to relitigate the same cause of action—or the alleged violation of the same primary right—that was involved in the *Pecoraro* action.  (See *DKN Holdings LLC v. Faerber*, *supra*, 61 Cal.4th at p. 818 ["claim preclusion 'prevents relitigation of the same cause of action in a second suit'" (italics omitted)]; *Mycogen Corp. v. Monsanto Co.*, *supra*, 28 Cal.4th at p. 896; *Samara v. Matar* (2017) 8 Cal.App.5th 796, 803.)  That is exactly what GBR is doing.

The *Pecoraro* judgment quieted title to the undivided one-half interest in the Property originally owned by Cy and Lou's parents, declared that GBR had no right or interest in that one-half interest, and ordered GBR to relinquish possession of that one-half interest in the Property.  Unlike the Loubar plaintiffs, who are simply seeking to enforce their rights as creditors in the *Pecoraro* judgment, GBR is attempting to relitigate who has the right to possess the Loubar plaintiffs' undivided one-half interest in the Property, which is the primary right adjudicated in the *Pecoraro* action.  Indeed, a judgment quieting title to real property generally bars a party to the judgment from asserting any adverse interest in the property acquired prior to the judgment.  (See *California Bank v. Traeger* (1932) 215 Cal. 346, 351 ["a simple judgment in favor of [a party] in a quiet title action 'operates as an estoppel upon the [other party] and determines title as between the parties and protects the [prevailing party] against any claim" by the other party (italics omitted)]; *Warden v. Stoll* (1930) 210 Cal. 374, 377 [same];

31

*Quirk v. Rooney* (1900) 130 Cal. 505, 510 ["We do not think it the policy of the law to allow as many different suits between the same parties in regard to the same subject-matter as there might be different modes of establishing title to property."]; *Little v. Schwartz* (1960) 182 Cal.App.2d 594, 599 ["the standard judgment in the ordinary quiet title action generally includes, as almost an inseparable part thereof, a prohibition against the defendant subsequently asserting a claim adverse to the title of the plaintiff," and such "a decree is final and conclusive, and so should it be, for otherwise the future security and safety of land titles based upon quiet title judgments would be endangered"].) Even if GBR's legal theories for why it has the right to possess the Loubar plaintiffs' one-half undivided interest in the Property had some validity (and as we will explain, they do not), GBR had the legal and factual bases for asserting those theories no later than 2010, when the Loubar plaintiffs purchased the Property pursuant to partition, which was before Catherine and Josephine filed their operative complaint in the *Pecoraro* action. GBR could have raised its defenses in that action.

GBR argues the *Pecoraro* judgement "did not 'quiet title' to all interests in the Property," but only to the "'leasehold interest' created by the 1963 lease." GBR is correct the *Pecoraro* judgment did not quiet title to all interests in the property: The judgment did not address the partnership's undivided one-half interest. But GBR's theory that the judgment quieted title only to a purported interest "created by" the 1963 lease, rather than the entirety of the Loubar plaintiffs' undivided one-half interest, is incorrect.

In their operative complaint in the *Pecoraro* action, Catherine and Josephine alleged GBR "took possession of the

32

Property"—defined as the 20-acre property that encompasses Parcels One, Three, and Eight—and "refused to restore possession of it" to them. In their prayer for relief, they sought a judgment "quieting title in [their] favor as fee title owners of the property" and "an order that [GBR] . . . has no right, title, estate, lien or interest in the property which is adverse" to Catherine and Josephine. In their trial brief, Catherine and Josephine argued the trial court should "both cancel the lease and enter judgment quieting title to the Property" and reiterated their demand that "title to [the Property] should be quieted as of August 3, 2012." The court granted the relief Catherine and Josephine requested, declaring in the judgment the Loubar plaintiffs were "entitled to . . . possession of [the] undivided fifty percent interest in the Property previously subject to the 1963 Lease" (i.e., the undivided half interest from Cy and Lou's parents, now owned by the Loubar plaintiffs), declaring GBR had "no right title, or interest in the undivided fifty percent interest in the Property" and enjoining GBR "from making any further adverse claims to said interest." The court never stated it was only quieting title to a leasehold interest "created by" the 1963 lease.[16]

---

[16] In its statement of decision, the trial court distinguished between the "fifty percent undivided interest in the . . . Property" owned by Cy and Lou's parents "at the time the Lease was executed" and the "other fifty percent undivided interest in the . . . Property . . . owned by Cy and Lou that was not subject to the 1963 Lease." Reading the statement of decision and judgment as a whole, the court's reference to the "undivided fifty percent interest in the Property previously subject to the 1963 Lease" is a reference to the undivided one-half interest originally owned by

33

GBR's contrary interpretation of the *Pecoraro* judgment is inconsistent with the relief requested by Catherine and Josephine and the terms of that judgment. By cancelling the 1963 lease, the *Pecoraro* judgment effectively determined the 1963 lease did *not* create any right in the property. If, as GBR asserts, the court in the *Pecoraro* action intended only to quiet title to interests created by the 1963 lease, the part of the judgment cancelling the lease would have been the end of the judgment; the court would have no reason to determine whether any party, for some other reason, held ownership interests or the right to possess the Property because those rights and interests would not have been before the court. But the *Pecoraro* judgment goes further: It declares that the Loubar plaintiffs, as "fee title holders to the Property," are entitled to "possession" of the undivided one-half interest previously owned by Cy and Lou's parents and subject to the 1963 lease and that GBR must "relinquish possession" of that one-half interest. That right of possession necessarily arises from an interest different from one "created by" the 1963 lease. By declaring that the Loubar plaintiffs had the right to possess the one-half interest, the court in the *Pecoraro* action necessarily quieted title to the entire one-half interest previously owned by Cy and Lou's parents and encumbered by the 1963 lease. (See *Southern Pacific Pipe Lines, Inc. v. State Bd. Of Equalization* (1993) 14 Cal.App.4th 42, 57

---

Cy and Lou's parents (i.e., the Loubar plaintiffs' one-half interest), not a purported interest "created by" the 1963 lease. (See *Lazar v. Superior Court* (1940) 16 Cal.2d 617, 622 [courts should construe a judgment "as a whole"]; *Dow v. Lassen Irrigation Co.* (2013) 216 Cal.App.4th 766, 781 [same].)

34

["'the judgment as entered should be liberally construed with a view of giving effect to the manifest intent of the court'"].)

GBR asserts it can litigate its right to possess the entire Property, including the Loubar plaintiffs' one-half interest, because the judgment states GBR is "not enjoined . . . from litigating any other interest in the Property." But the "other interest" the *Pecoraro* judgment refers to is the one-half interest not previously subject to the 1963 lease (i.e., the partnership's one-half interest)—not the Loubar plaintiffs' one-half interest. (See *Deutsche Bank National Trust Co. v. Pyle* (2017) 13 Cal.App.5th 513, 524 ["purpose of a quiet title action 'is to finally settle and determine, as between the parties, all conflicting claims to the property in controversy, and to decree to each such interest or estate therein as he [or she] may be entitled to'"].)

Finally, GBR contends (without citing any authority) "claim preclusion is a bar on '"claims', not defenses." The law is to the contrary. As discussed, claim preclusion "'prevents relitigation of the same cause of action in a second suit between the same parties'" (*DKN Holdings LLC v. Faerber*, *supra*, 61 Cal.4th at p. 824), including "'all grounds for, *or defenses to*, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.'" (*State Bd. of Equalization v. Superior Court* (1985) 39 Cal.3d 633, 641, italics added; see *Brown v. Felsen* (1979) 442 U.S. 127, 131 [99 S.Ct. 220]; *Worton v. Worton* (1991) 234 Cal.App.3d 1638, 1647.) As the Supreme Court has explained, the "reason for this is manifest. A party cannot by negligence or design withhold issues and litigate them in consecutive actions. Hence the rule is that the prior judgment is *res judicata* on matters which were

35

raised or could have been raised, on matters litigated or litigable." (*Sutphin v. Speik* (1940) 15 Cal.2d 195, 202; see *State Compensation Insurance Fund v. ReadyLink Healthcare, Inc.* (2020) 50 Cal.App.5th 422, 447; *Aerojet-General Corp. v. American Excess Ins. Co.* (2002) 97 Cal.App.4th 387, 402.) Thus, the doctrine "'operates to demand of a defendant that all his defenses to the cause of action urged by the plaintiff be asserted under the penalty of forever losing the right to thereafter so urge them.'" (*Sutphin*, at p. 202; see *Murphy v. Murphy* (2008) 164 Cal.App.4th 376, 404.) As the Supreme Court explained in denying a petition for rehearing in *Sutphin*, a plaintiff may not "be compelled to relitigate" the same right whenever the defendant "can discover a new theory upon which to attack it." (*Sutphin*, at p. 205.) Which is what GBR is attempting to do here: relitigate its right to possess the Loubar plaintiff's undivided half interest on theories (based on the effect of the 2007 leases and the partition order) it could have raised in the *Pecoraro* action.

The Restatement (Second) of Judgments is to the same effect. (See *Canfield v. Security-First Nat. Bank* (1939) 13 Cal.2d 1, 30-31 [although the Restatement "does not constitute a binding authority, considering the circumstances under which it has been drafted, and its purposes, in the absence of a contrary statute or decision in this state, it is entitled to great consideration as an argumentative authority"]; *Karapetian v. Carolan* (1948) 83 Cal.App.2d 344, 349 ["[t]here can be no doubt that the rules announced in the Restatement are sound, and reach the fair and equitable result"].) Section 18 of the Restatement explains that where, as here, a valid and final judgment "is rendered in favor of the plaintiff," the plaintiff may "maintain an action upon the

36

judgment," and "[i]n an action upon the judgment, the defendant cannot avail himself of defenses he might have interposed . . . in the first action." (Rest.2d Judgments, § 18.) "It is immaterial whether the defendant had a defense to the original action if he did not rely on it . . . ." (*Id.*, at com. a; see also *Chacon v. Union Pacific Railroad* (2020) 56 Cal.App.5th 565, 580 [citing section 18 of the Restatement]; *Guerrero v. Department of Corrections & Rehabilitation* (2018) 28 Cal.App.5th 1091, 1098 [same]; *Ferraro v. Camarlinghi* (2008) 161 Cal.App.4th 509, 531 [same].)

GBR knew all the facts relevant to the 2007 leases and the 2010 partition order before Catherine and Josephine filed the *Pecoraro* action. True, Catherine and Josephine specifically sought to cancel, and the trial court did cancel, the 1963 lease, so that they could obtain possession of their undivided one-half interest. But GBR knew Catherine and Josephine were seeking to quiet title to any interest GBR claimed in their one-half interest in the Property. To the extent GBR wanted to argue it had the right to possess the one-half interest for a reason other than the rights granted under the 1963 lease, including because of the 2007 leases and the 2010 partition order, GBR had to raise those grounds in the *Pecoraro* action.

## E. *GBR's Defenses Also Fail on the Merits*

Even if claim preclusion did not bar GBR from raising its defenses to the Loubar plaintiffs' right to possess their one-half interest, the trial court did not err in ruling against GBR on those defenses. GBR contended in the trial court, and contends on appeal, that while the 2007 leases may have originally granted GBR the right to possess only a collective one-half interest in the property, the partition order (in the words of

37

counsel for GBR at oral argument) "changed everything" and established that the 2007 leases granted GBR the right to possess the entire Property. GBR relies on this language in the partition order: "The sale and purchase of the property shall be subject to all leases . . . affecting the Property referenced in the Title Report, and all encumbrances of record." The trial court rejected GBR's argument, ruling that the 2007 leases "convey[ed] only a leasehold interest of an undivided 50% of the Property" and that the partition order "did not broaden the coverage and/or scope of the 2007 leases." The trial court was correct.

We interpret the stipulated partition order according to the rules governing the interpretation of contracts. (*Estate of Jones* (2022) 82 Cal.App.5th 948, 952; *Machado v. Myers* (2019) 39 Cal.App.5th 779, 792.) We give effect to the parties' mutual intentions, first examining the judgment's plain language. (*Jones*, at p. 952; see *Landeros v. Pankey* (1995) 39 Cal.App.4th 1167, 1172 [a stipulated order or judgment "is subject to construction as to the parties' intent"].) "Extrinsic evidence is allowed to determine the parties' intent when a stipulated order [or judgment] is ambiguous," but "[u]nless there are conflicts in the extrinsic evidence, the interpretation of a stipulated . . . order [or judgment] is reviewed de novo." (*SLPR, L.L.C. v. San Diego Unified Port District* (2020) 49 Cal.App.5th 284, 299; see *Rancho Pauma Mutual Water Co. v. Yuima Municipal Water Dist.* (2015) 239 Cal.App.4th 109, 115.)

There was no ambiguity in the language of the partition order or the leases. The partition order stated the sale of the Property would be "subject to all leases . . . affecting the Property referenced in the Title Report, and all encumbrances of record." The title report references the 1963 lease and the two 2007

38

leases.  It states the lessee's interest under each of the 2007 leases "has been assigned to GBR" and, for each lease, identifies the instrument number of both a "Memorandum of Lease and Purchase Option" and an assignment recorded with the Santa Clara County Recorder.  Each of the 2007 leases and each of the recorded memoranda describes the interest leased under the agreement as a "25% tenancy in common interest" in the Property (collectively, one-half interest for both leases), and each of the subsequent assignments to GBR similarly identifies the assigned lease as "affecting an undivided 25% interest in the Property as . . . evidenced by" the recorded memorandum of lease.

When the Loubar plaintiffs purchased the property in 2010 pursuant to the partition, they may, as GBR maintains, very well have purchased the Property "subject to" all three leases.  The 1963 lease granted the lessee the right to possess an undivided one-half interest in the Property, and each of the two 2007 leases granted the lessee the right to possess an undivided one-fourth interest.  That's how GBR had the right to possess the entire Property:  At the time (i.e., 2010), GBR held the lessee's rights under all three leases (25%+25%+50%).  But not after 2013. When the court in the *Pecoraro* action cancelled the 1963 lease, everything indeed changed, but not in the way GBR wants it to have changed.  After the *Pecoraro* judgment, the Property remained "subject to" the 2007 leases, but those two leases continued to grant GBR the right to possess only a collective one-half interest in the property.  Without the *Pecoraro*-extinguished rights under the 1963 lease, GBR no longer had the right to possess the entire Property.  Thus, even if GBR's theory is not barred, it only gets GBR halfway to where it wants to go;

39

GBR is still 50 percent short of having the right to possess the entire property.

GBR essentially asks us to add a new provision to the partition order that redefines the scope of the premises leased under each of the 2007 leases. GBR wants the partition order to state that each lease that previously encumbered only a fractional interest in the Property now encumbers a 100 percent interest in Property, so that GBR only needs to possess the lessee's rights under one of the leases to possess the entire property. That is not what the partition order says, and it is not our role to rewrite the partition order. (See *Machado v. Myers*, *supra*, 39 Cal.App.5th at p. 792 ["[i]t is not the province of the court to add to the provisions" to a contract, "to insert a term not found therein," or "to make a new stipulation for the parties"]; *Jones v. World Life Research Inst.* (1976) 60 Cal.App.3d 836, 840 [same].) And even if the language of the partition order were ambiguous (and GBR maintains it is unambiguous), GBR presented no extrinsic evidence that would suggest the parties intended to broaden the scope of the leases.[17]

---

[17] GBR also relies on a "Quiet Enjoyment" provision of the 2007 leases, which states the lessee (GBR) "shall peaceably and quietly have, hold and enjoy the Premises . . . without hindrance or molestation from Landlord, subject to the terms and provisions of the Lease." That provision does not help GBR. Each lease defines the "Premises" as a "25% tenancy in common interest in the land (and all improvements thereon owned by Landlord)." The quiet enjoyment provision simply states GBR has the right to use the one-fourth undivided interest leased under the agreement—an unremarkable proposition that does not advance GBR's position.

GBR also argued in the trial court, and argues on appeal, that the Loubar plaintiffs consented to GBR's operation of the mobilehome park on the entire Property.  The trial court ruled the Loubar plaintiffs did not consent to their exclusion from their one-half interest in the property.  GBR has not shown the trial court erred.

There is no ouster where one cotenant consents to the other's possession or use of the property.  (*Burnscher v. Reagh* (1958) 164 Cal.App.2d 174, 178; see *Spinks v. Equity Residential Briarwood Apartments* (2009) 171 Cal.App.4th 1004, 1043 ["'[w]here there is a consensual entry, there is no tort'"].)  GBR's argument is that the Loubar plaintiffs consented to GBR's occupation of the entire Property because they stipulated to the partition order.  For the reasons discussed, GBR is incorrect.  Moreover, whether a party consented to an ouster is a factual issue, and substantial evidence supported the trial court's finding the Loubar plaintiffs did not consent.[18]  (See *Pay 'N Pak Stores,*

---

[18]     To the extent consent is an affirmative defense to an ouster, GBR would have the burden to prove consent at trial.  (See, e.g., *Stoiber v. Honeychuck* (1980) 101 Cal.App.3d 903, 920-921 [consent is an affirmative defense to a cause of action for nuisance]; but see *Spinks v. Equity Residential Briarwood Apartments*, *supra*, 171 Cal.App.4th at p. 1043 ["lack of consent is an element of the wrong" for trespass].)  "'In the case where the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals . . . the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law'" because "'the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial

41

*Inc. v. Superior Court* (1989) 210 Cal.App.3d 1404, 1408 [whether landlord consented to sublessor leasing property "presented a factual dispute"]; see also *Antelope Valley Groundwater Cases* (2018) 30 Cal.App.5th 602, 618, fn.11 ["The issue of an implied agreement or consent is ordinarily a factual question to be resolved by the trier of fact."].)  Catherine and Josephine sued to quiet title to their interest in the Property, free and clear of any adverse claims of GBR, and to recover possession, shortly after they purchased the property pursuant to partition.  The Loubar plaintiffs never ceased their attempt to recover possession of their one-half interest in Property from GBR (or at least a share of the rental income).  They did not consent.

F.      *Judicial Estoppel Does Not Bar the Loubar Plaintiffs' Claims*

In the *Pecoraro* action the Loubar plaintiffs originally sought to recover damages from Cy and GBR for their continued possession of the Property.  In their closing trial brief, however, the Loubar plaintiffs stated they would "not pursue their other claims" if the court canceled the 1963 lease and quieted title to the Property in their favor.  GBR argues the trial court erred in ruling the doctrine of judicial estoppel did not bar the Loubar plaintiffs from seeking damages in this action for GBR's continued possession of the Property, even after the *Pecoraro* judgment.  The trial court did not err.

---

determination that it was insufficient to support a finding."'" (*Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838.)  Even if lack of consent were an element of the Loubar plaintiffs' claims, rather than an affirmative defense, the trial court did not err.

42

"""'Judicial estoppel precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position. [Citations.] *The doctrine's dual goals are to maintain the integrity of the judicial system and to protect parties from opponents' unfair strategies.* [Citation.] Application of the doctrine is discretionary.'" [Citation.] The doctrine applies when "(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake.'"" (*People v. Castillo* (2010) 49 Cal.4th 145, 155; see *Filtzer v. Ernst* (2022) 79 Cal.App.5th 579, 587; *Textron Inc. v. Travelers Casualty & Surety Co.* (2020) 45 Cal.App.5th 733, 754.)

"'The determination of whether judicial estoppel can apply to the facts is a question of law reviewed de novo, i.e., independently [citations], but the findings of fact upon which the application of judicial estoppel is based are reviewed under the substantial evidence standard of review. [Citations.] . . . [¶] Even if the necessary elements of judicial estoppel are found, because judicial estoppel is an equitable doctrine [citations], whether it should be applied is a matter within the discretion of the trial court. [Citations.] The exercise of discretion for an equitable determination is reviewed under an abuse of discretion standard.'" (*Miller v. Bank of America, N.A.* (2013) 213 Cal.App.4th 1, 10; see *DotConnectAfrica Trust v. Internet Corp. for Assigned Names & Numbers* (2021) 68 Cal.App.5th

1141; *Blix Street Records, Inc. v. Cassidy* (2010) 191 Cal.App.4th 39, 46-47.)

The trial court ruled the Loubar plaintiffs did not take totally inconsistent positions. According to the court, a "reasonable reading" of the Loubar plaintiffs' statement they would not pursue their other claims was that they would not pursue the other causes of action asserted in their complaint—not that they intended to forfeit their right to seek damages "not yet accrued" in future actions. The trial court was correct. The Loubar plaintiffs asserted several causes of action in their complaint,[19] but in their closing brief asked the court to enter judgment only on their causes of action for cancellation of the 1963 lease and to quiet title to the Property. It is not reasonable to interpret the statement as a promise not to seek additional relief or damages in the event the GBR refused to comply with a judgment granting their requested relief.[20]

The trial court also correctly ruled GBR did not show the Loubar plaintiffs were "successful in asserting the first position." A party is successful in asserting a position if "the tribunal adopted the position or accepted it as true." (*People v. Castillo*, *supra*, 49 Cal.4th at p. 155.) "Judicial estoppel does not apply,"

---

[19] For example, the Loubar plaintiffs asserted causes of action for rescission, breach of fiduciary duty, financial elder abuse, and fraudulent concealment, none of which they pursued at trial.

[20] Arguably the Loubar plaintiffs' claims, in this action, for damages between August 2012 and May 2013 before the trial court entered judgment in the *Pecoraro* action were inconsistent with its prior statements. Any inconsistency, however, is immaterial in light of our holding that claim preclusion bars the Loubar plaintiffs from seeking damages during that time period.

however, "when a party merely advocates inconsistent provisions . . . ."  (*RSL Funding, LLC v. Alford* (2015) 239 Cal.App.4th 741, 748.)  Even if the Loubar plaintiffs had advocated inconsistent positions by stating they would not pursue other claims, there is no reason to believe the trial court in the *Pecoraro* action "adopted" or "accepted" the position.  The trial court could only— and indeed, was required to—cancel the lease and quiet title in favor of the Loubar plaintiffs if the court determined they proved their causes of action during the trial.  (See *McDermott Will & Emery LLP v. Superior Court* (2017) 10 Cal.App.5th 1083, 1103 ["We presume the trial court knew and properly applied the law absent evidence to the contrary."].)  There is no reason to believe the Loubar plaintiffs "gain[ed] an advantage" on these causes of action by abandoning other causes of action.  (*Castillo*, at p. 155.)

Finally, even if GBR had established the elements of judicial estoppel, reversal would not be warranted.  Because "judicial estoppel is an 'equitable doctrine,' . . . its application, even where all elements of the doctrine are met, is 'discretionary.' The doctrine must be 'applied with caution' and is 'limited to egregious circumstances'" where "'"a party's inconsistent behavior will otherwise result in a miscarriage of justice."'"  (*Filtzer v. Ernst*, *supra*, 79 Cal.App.5th at p. 588; see *Minish v. Hanuman Fellowship* (2013) 214 Cal.App.4th 437, 449.)  GBR does not argue why, even assuming the elements of judicial estoppel apply, the circumstances here are sufficiently egregious that the trial court abused its discretion in declining to apply the doctrine.

45

G.    *The Trial Court Did Not Err in Ruling Against GBR*
      *on Its Causes of Action for Declaratory Relief*

GBR argues the trial court erred in ruling against GBR and in favor of the Loubar plaintiffs on the causes of action for declaratory relief in GBR's cross-complaint.  In particular, GBR contends the trial court erred in ruling "the 2007 leases give GBR the non-exclusive right to possess an undivided 50% interest in Parcels One and Three but they do not give GBR any rights as to Parcel Eight . . . ."

GBR has a point, but not one that warrants reversal.  GBR presented uncontradicted evidence the 2007 lease agreements and related documents describe the property encumbered by the leases as including Parcel Eight.  The 2007 leases describe the encumbered property as "all of lots 25 and 26."  Records from the Santa Clara County Recorder's Office describe the 20-acre property originally purchased by Lou and Cy's parents as "all of lots 25 and 26," and in turn describe Parcel One as "all of Lots 25 and 26," except for a certain portion of Lot 26, and Parcel Eight as "that portion of Lot 26" excepted from Parcel One.  Therefore, "all of" lot 26, as described in the leases, includes Parcel Eight.  Moreover, the memorandum of lease GBR's predecessors recorded with the County of Santa Clara describe the encumbered property as Parcels One, Three,[21] and Eight.  Similarly, the lease

---

[21]    Parcel Three includes property not part of Lots 25 and 26, which the Property now includes following the condemnation proceeding.  If anything, the original 2007 leases may have inadvertently omitted Parcel Three, but not Parcel Eight, from the leased property.

46

assignment GBR and its predecessors executed described the encumbered property as Parcels One, Three, and Eight.[22]

Any error by the trial court on this cause of action, however, was harmless because GBR did not seek a declaration it had the right to possess an undivided one-half interest in Parcel Eight under the 2007 leases. Instead, GBR sought declarations that it had the right "to occupy and use all parts of" the Property under the 2007 leases and that its "occupation of the Property . . . does not violate or infringe on any right held by Plaintiffs." As discussed, claim preclusion bars GBR from contending it has the right to occupy and use the Property, including Parcel Eight, to the exclusion of the Loubar plaintiffs, and GBR's contentions lack merit in any event. Therefore, the trial court properly entered judgment against GBR on its causes of action for declaratory relief. (See *Transamerica Ins. Co. v. Tab Transp., Inc.* (1995) 12 Cal.4th 389, 399, fn. 4 ["'"[A] ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion."'"].)

Finally, GBR argues the trial court erred because it "refused to declare GBR's rights and obligations under the *Pecoraro* judgment" and did "not tell GBR what it needed to do

---

[22] The trial court ruled the three-year statute of limitations governing actions to reform a contract based on mistake barred GBR's claim. (See § 338, subd. (d); *North Star Reinsurance Corp. v. Superior Court* (1992) 10 Cal.App.4th 1815, 1822-1823.) But there was nothing to reform. The language of the 2007 leases and subsequent assignments all describe the encumbered property as including Parcel Eight.

47

[to] avoid further suits." The problem for GBR is that it only asked for one thing: to operate the mobilehome park on the entire Property, to the exclusion of the Loubar plaintiffs. That it may not do (at least not without the consent of the Loubar plaintiffs). GBR does not develop an alternative argument or describe an alternative declaration of rights it believes it was entitled to, nor does GBR cite applicable authority that would support such a declaration of rights. Therefore, GBR is not entitled to any other relief. (See *D. Cummins Corp. v. United States Fidelity & Guaranty Co.* (2016) 246 Cal.App.4th 1484, 1489 ["'One cannot analyze requested declaratory relief without evaluating the nature of the rights and duties that plaintiff is asserting, which must follow some recognized or cognizable legal theories that are related to subjects and requests for relief that are properly before the court.'"]; see also *Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 700 [arguments that are not developed are forfeited].)

## DISPOSITION

The judgment is reversed. The trial court is directed to conduct a new trial on damages, limiting the Loubar plaintiffs' claims for damages to those incurred after January 12, 2017. After the new trial, the trial court is directed to enter a new judgment on the complaint and cross-complaint that, among other things, finds in favor of GBR and against the Loubar plaintiffs on the Loubar plaintiffs' third cause of action of the complaint, and in favor of the Loubar plaintiffs and against GBR on GBR's cross-complaint. The parties are to bear their costs on appeal.

SEGAL, J.


We concur:


PERLUSS, P. J.


FEUER, J.

49